IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNELLY CONSTRUCTION CORPORATION, | : : | |
| *Plaintiff*, | : : | CIVIL ACTION |
| v. | : : | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA et al., | : : | No. 16-555 |
| *Defendants*. | : | |

**MEMORANDUM**

PRATTER, J.   JULY 23, 2018

Walsh Heery Joint Venture (WHJV) was a general contractor retained by Pennsylvania's Department of General Services for construction work on new prison facility in Montgomery County. WHJV hired subcontractor Connelly Construction Corporation to perform masonry work on the facility. After its work on the project concluded, Connelly sued WHJV, claiming that it suffered excess costs on labor and material due to WHJV's mismanagement. WHJV has brought two counterclaims.

Until now, the litigation has focused on whether Connelly waived its claims during the project by periodically executing releases and change orders. After a mini-bench trial, the Court concluded that Connelly had waived most of its claims against WHJV. *See* Doc. Nos. 77 & 84. Now, the parties have turned their attention to the remaining claims in the case with a bouquet of four motions. The remaining claims are:

**1. Connelly's Claim for Retainage:** Because the Commonwealth has withheld a portion of its final payment to WHJV, WHJV has withheld a portion of its payment to Connelly. Connelly brought a claim to recover these "retainage" funds from WHJV, and WHJV has moved for summary judgment.

1

**2. WHJV's Counterclaim for Liquidated Damages:** Because the Commonwealth may seek to assess liquidated damages against WHJV for any delay to the overall project, WHJV brought a counterclaim for Connelly's partial responsibility for the delay. There are cross-motions on this claim: Connelly has moved for summary judgment, while WHJV has moved to dismiss the (unripe) claim without prejudice.

The Court denies WHJV's motion for summary judgment on Connelly's claim for retainage. As to the counterclaim for liquidated damages, the Court grants WHJV's motion for leave to dismiss without prejudice and moots Connelly's motion for summary judgment.[1]

### STANDARD OF REVIEW

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere

---

[1] Two other claims were resolved during the briefing on these motions. First, Connelly had moved for partial summary judgment to recover payment for its work under the final change order in the project, Change Order No. 7. At oral argument, the parties reported that this claim had been settled. The Court therefore dismisses Connelly's partial motion for summary judgment (Doc. No. 88) as moot. Second, during construction, the prison's concrete floor had been discolored and needed to be repaired. WHJV initially brought a counterclaim for Connelly's share of responsibility for the discoloration, and Connelly moved for summary judgment. Now, because WHJV does not oppose the motion, WHJV's counterclaim for slab discoloration is dismissed with prejudice.

suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**DISCUSSION**

First, the Court denies WHJV's motion for summary judgment on Connelly's claim for retainage. Second, the Court dismisses WHJV's counterclaim for liquidated damages without prejudice.

**I. Connelly's Claim for Retainage**

The Commonwealth has withheld a portion of its final payments to WHJV allegedly because of delays to the project. WHJV, in turn, has withheld over $200,000 in payments to Connelly. Connelly has asserted a claim for this "retainage," and WHJV has moved for summary judgment on the claim. The crux of the dispute is whether WHJV is currently obligated to release this (or any) money to Connelly.

WHJV argues that the "pay-if-paid" clause in its subcontract with Connelly provides that the retainage is to be released only after WHJV has been paid by the Commonwealth. Because the Commonwealth has not paid WHJV, the argument goes, WHJV is not obligated to pay the retainage to Connelly. In response, Connelly argues that the "prevention doctrine" bars WHJV from relying on the pay-if-paid clause. The Court agrees: because WHJV's own conduct has delayed the project and WHJV has taken no documented steps to secure payment — meaning that the Commonwealth's non-payment is WHJV's own fault — WHJV is barred from using the pay-if-paid clause as a shield against Connelly's claim for retainage.

*A. Facts*

Completion of the construction project has been delayed for over two years. By this point, a reasonable jury could conclude that WHJV bears some responsibility for the delay. In particular, two letters from the Commonwealth's Department of General Services to WHJV executives in August 2015 highlight several potentially problematic issues with WHJV's work

4

on the project.[2]  As a result, the Commonwealth had "serious concerns regarding both late completion and unacceptable performance of the project work."  Viewing the evidence in the light most favorable to Connelly, then, WHJV appears to be at least partly responsible for the project delay.

The project delay has triggered a retainage provision in the contract between WHJV and the Commonwealth.  The contract provides that the Commonwealth's Department of General Services may withhold a portion of its payments to WHJV until the close of the project: "All money retained by DGS may be withheld from [WHJV] until Final Inspection and Closeout Inspection issues have been resolved."  Contract of Dep't of Gen. Servs. & WHJV, General Conditions, ¶ 13.7(B).

Because WHJV, as the general contractor, has not been paid in full by the Commonwealth, WHJV has not paid its subcontractor, Connelly, in full.  Pursuant to the subcontract between WHJV and Connelly, WHJV may withhold payments from Connelly in proportion to Connelly's responsibility for payments to WHJV withheld by the Commonwealth: "[WHJV] may retain from each progress payment sums otherwise due [to Connelly] until final payment.  The amount of retention shall be the amount retained from [WHJV's] payment from [the Commonwealth] for [Connelly's] work."  Subcontract ¶ 3.3.  The subcontract also includes a pay-if-paid clause: "if, and only if, [the Commonwealth] pays [WHJV], which is an express condition precedent to [WHJV's] duty to pay [Connelly], progress payments shall be due to

---

[2]  The letters present a litany of problems with WHJV's work on the project.  "[N]umerous subcontractors and suppliers are increasingly complaining about non-payment for base contract work;" WHJV "has apparently struggled to submit accurate monthly invoices;" the project had "numerous non-conformance and installation deficiency issues;" the Commonwealth had flagged pending issues "for over a year, yet many of these items remain unaddressed and unresolved;" "WHJV continues to provide insufficient manpower to complete base contract work, let alone provide the additional manpower it will take to address and correct the deficiency issues;" and "WHJV continues to appear oblivious to the fact that the project encompasses design and construction of a sophisticated maximum security prison."  *See* Doc. No. 91, Ex. B.

[Connelly]." *Id.* ¶ 3.6. As the terminology suggests, on the face of the contract WHJV's duty to pay Connelly is not triggered until the Commonwealth pays WHJV.

### B. Discussion

The plain terms of the pay-if-paid clause make payment from the Commonwealth to WHJV an "express condition precedent" of WHJV's duty to pay Connelly. As the Third Circuit Court of Appeals has explained, parties to a construction contract may use a pay-if-paid clause "to shift the risk of the owner's nonpayment under the subcontract from the contractor to the subcontractor." *Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 184 (3d Cir. 2011) (quoting *Fixture Specialists, Inc. v. Global Const., LLC*, No. 07-CV-5614, 2009 WL 904031, at *4 (D.N.J. Mar. 30, 2009)). Indeed, the WHJV-Connelly subcontract made this risk-shifting explicit: "[Connelly] assumes toward [WHJV] all of the obligations, risks and responsibilities that [WHJV] . . . has assumed toward the [Commonwealth]." Subcontract ¶ 1.2.

Connelly does not dispute that its subcontract includes a pay-if-paid clause. Instead, Connelly argues that, notwithstanding the clause, the prevention doctrine bars WHJV from relying on the clause in this situation.

"Pennsylvania law recognizes that pay-if-paid clauses present a condition precedent to payment." *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.*, 730 F. Supp. 2d 401, 421 (E.D. Pa. 2010). The law imposes on parties to such a clause "an implied duty not to frustrate conditions precedent to their performance." *Id.* As the Supreme Court of Pennsylvania once put the matter, "if a promisor is himself the cause of the failure of performance . . . of a condition upon which his own liability depends, he cannot take advantage of the failure." *Howley v. Scranton Life Ins. Co.*, 53 A.2d 613, 616 (Pa. 1947).

The parties disagree about when the prevention doctrine is triggered. Connelly argues that even an <u>inadvertent</u> failure by WHJV to bring about the condition precedent bars WHJV from relying on the pay-if-paid clause. WHJV, by contrast, argues that only a <u>deliberate</u> failure causing a delay to the project prevents it from relying on the clause. Resolving this dispute will determine the fate of WHJV's motion for summary judgment. Viewed in the light most favorable to Connelly, the evidence shows that WHJV's <u>inadvertence</u> is partly to blame for the delay in the construction project, but the record does not suggest that WHJV is <u>deliberately</u> trying not to finish the project.

The Court concludes the prevention doctrine may be triggered by mere inadvertence in certain circumstances. Because WHJV prevented the occurrence of the condition precedent — no matter whether WHJV did so deliberately — WHJV cannot here rely on the pay-if-paid clause. Metaphors abound to describe the complete control WHJV has over the conclusion of the project (and, by extension, over the downstream payment to Connelly): WHJV holds all the cards; it is the captain of its own ship; the ball is in its court; the face-off with the Commonwealth is its responsibility; what is to prevent WHJV from taking a dive. "As a general rule, when one party to a contract unilaterally prevents the performance of a condition upon which his own liability depends, the culpable party may not then capitalize on that failure." *Apalucci v. Agora Syndicate, Inc.*, 145 F.3d 630, 634 (3d Cir. 1998). Without this rule, Connelly would be a hostage to WHJV's sloth.

Case law supports the conclusion that WHJV may not rely on the pay-if-paid clause if it is to blame for the non-satisfaction of the condition precedent — here, payment from the Commonwealth to WHJV. In its briefing, WHJV did not cite any case in which a court approved the protection of a pay-if-paid clause in the face of "merely" inadvertent conduct like

7

WHJV's. Instead, every case discussed by WHJV reached the opposite conclusion WHJV urges: each court excused the non-satisfaction of the condition precedent and, hence, directed payment to the downstream party. *See In re Gen. DataComm Indus., Inc.*, 407 F.3d 616, 621 (3d Cir. 2005) (excusing condition precedent of employee retirement when promisor employer prevented retirement by firing employees); *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000) (excusing condition precedent in pay-if-paid between contractor and lenders when promisor contractor concealed costly design changes that extended duration of the project); *Apalucci*, 145 F.3d at 634 (excusing condition precedent of an "actual trial" when promisor insurer "[sat] by while a default judgment was entered"); *Rainier v. Champion Container Co.*, 294 F.2d 96, 103 (3d Cir. 1961) (excusing condition precedent of approval of asset sale by corporate board when promisor corporate president never submitted sale to board for approval); *Quinn Constr.*, 730 F. Supp. 2d at 421 (excusing condition precedent in pay-if-paid clause when promisor contractor agreed that owner would never have to pay for pertinent work); *Wissahickon Realty Corp. v. Boyle*, 122 A.2d 720, 722 (Pa. 1956) (excusing condition precedent of grant of liquor license when promisor restauranteur dropped her license application).[3]

At oral argument, counsel for WHJV could cite no case drawing the deliberate/inadvertent distinction that WHJV urges here. Mindful that this construction dispute is governed by state law, the Court declines to break new ground by drawing such a distinction now. Therefore, the Court concludes that inadvertently preventing the satisfaction of the condition precedent, when that condition persists over time as it has here, is enough to trigger the prevention doctrine.

---

[3] To be sure, promisors in some of these cases took <u>deliberate</u> steps to thwart the condition precedent. *See, e.g.*, *Wissahickon Realty*, 122 A.2d at 722; *Quinn Constr.*, 730 F. Supp. 2d at 420; *In re Gen. DataComm Indus.*, 407 F.3d at 621. Other promisors, however, prevented the condition precedent by omission, and the cases do not specify whether the omission was <u>inadvertent</u>. *See, e.g.*, *Apalucci*, 145 F.3d at 634; *Rainier*, 294 F.2d at 103.

Other authorities bolster the conclusion that invocation of the prevention doctrine does not distinguish between deliberate and inadvertent conduct. For instance, the *Restatement (Second) of Contracts* summarizes the doctrine without reference to the promisor's culpability: "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." RESTATEMENT (SECOND) OF CONTRACTS § 245 (1981). The commentary on the rule explains that the promisor's "duty of good faith and fair dealing . . . may require some cooperation on his part" to satisfy a condition precedent. *Id.* cmt. a. This cooperation could mean that the promisor must "refrain[] from conduct that will prevent or hinder the occurrence of that condition" or must "tak[e] affirmative steps to cause its occurrence." *Id.*

The *Restatement* even provides an illustrative example that makes no reference to the "deliberateness" of the promisor thwarting the satisfaction of a condition precedent:

> *A* contracts with *B* to manufacture and deliver 100,000 plastic containers for a price of $100,000. The colors of the containers are to be selected by *B* from among those specified in the contract. *B* delays in making his selection for an unreasonable time, holding up their manufacture and causing *A* loss. *B*'s delay is a breach. His duty of good faith and fair dealing includes a duty to make his selection within a reasonable time.

RESTATEMENT (SECOND) OF CONTRACTS § 235 cmt. b illus. 3 (1981). *B* simply delayed his selection — for all we know, he did so inadvertently. Likewise, even if WHJV's delay of the project was merely inadvertent, WHJV has still prevented a condition precedent to its duty to pay Connelly the retainage.

Professor Williston's treatise further supports the notion that the prevention doctrine applies to an inadvertent as well as a deliberate failure to satisfy a condition precedent. The treatise puts the rule this way: "If a promisor prevents or hinders the occurrence or fulfillment of

9

a condition to the duty of performance, the condition is excused." 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 39:4 (4th ed. 1990). Williston's reason for the rule is that "a party should not be able to take advantage of its own wrongful act." *Id.* § 39:6. "[I]t is not necessary that there be a specific malevolent intent." *Id.* § 39:10. It can, in fact, be "wrongful" to do nothing.

Neither of WHJV's two remaining arguments is persuasive.

First, WHJV maintains that a "mere inadvertence" rule would eviscerate pay-if-paid clauses. After all, WHJV argues (somewhat curiously), a delayed project completion date is almost always traceable to some action or inaction by the general contractor.

But if WHJV holds all the cards when it comes to finishing the project, it overplays its hand here. Payment from the owner to the general contractor — the condition precedent — could be delayed for many reasons other than the inadvertence of the general contractor. For instance, bad weather could stall a project and delay the final payment from the owner. Or the owner may simply go belly-up. In situations like these, the pay-if-paid clause would not be nullified. Instead, it would continue to serve its intended function: shifting the risk of owner non-payment from the general contractor to the subcontractor.

Second, WHJV points out that its incentives are aligned with Connelly's: both parties want the project to be finished as soon as possible. Only then will the Commonwealth pay WHJV for all of its work. Moreover, until then, WHJV faces $35,000 of liquidated damages assessed by the Commonwealth for every day of delay. Under these circumstances, why would WHJV drag its feet on finishing the project, just to avoid triggering its duty to pay Connelly a "paltry" $200,000?

This argument misses the point. Yes, WHJV has every incentive to finish the project. As a factual matter, this incentive-based argument would suggest that any delay attributable to WHJV is probably inadvertent, not deliberate. But this *factual* point says nothing about whether the *legal* standard for triggering the prevention doctrine is inadvertence or deliberateness. WHJV's motion for summary judgment on Connelly's claim for retainage is denied.

## II. WHJV's Counterclaim for Liquidated Damages

When this case began, WHJV asserted a counterclaim against Connelly for its share of liquidated damages that WHJV expected would be claimed by the Commonwealth for the delayed project. Now, Connelly has moved for summary judgment on the counterclaim, arguing that WHJV has offered no evidence — expert or otherwise — that Connelly delayed the overall project.

WHJV concedes that it has no evidence or predicate to support its counterclaim. Instead, because it has yet to be found liable for liquidated damages to the Commonwealth, WHJV argues that its counterclaim is not ripe. Accordingly, it has filed a motion for leave to dismiss the counterclaim without prejudice. For the reasons laid out below, the Court dismisses the counterclaim without prejudice, mooting Connelly's motion for summary judgment.

### A. *Rule 41 Voluntary Dismissal – Standard*

Under Federal Rule of Civil Procedure 41, once a party has answered a claim, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2); *see also* Fed. R. Civ. P. 41(c) (applying this rule to defendants' requests to dismiss counterclaims as well).

Requests for voluntary dismissal are granted "liberally." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990). The nonmoving party bears the burden of showing substantial prejudice, *see Equal Opportunity Employment Comm'n v. Bethlehem Steel Corp.*, 727

F. Supp. 952, 954 (E.D. Pa. 1990), which must be something "other than the mere prospect of a second lawsuit," *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d at 863 (quotations omitted).

Courts evaluating a Rule 41 motion focus on a set of overlapping factors, such as:

1) The moving party's diligence in requesting a voluntary dismissal.

2) The progress of the current litigation.

3) The nonmoving party's "efforts and expense" so far in the case, including whether a dispositive motion was filed on the claim.

4) The potential for duplicative expense in a second, future litigation.

*E.g.*, *In re Zoloft (Sertralinehydrochloride) Prod. Liab. Litig.*, 176 F. Supp. 3d 483, 499 (E.D. Pa. 2016) (quoting *Grover v. Eli Lilly and Co.*, 33 F.3d 716, 718 (6th Cir. 1994)); *Maleski v. DP Realty Tr.*, 162 F.R.D. 496, 498 (E.D. Pa. 1995).

### B. Rule 41 Voluntary Dismissal – Application

Balancing the factors, the Court dismisses the counterclaim without prejudice.

*1. WHJV has been diligent in requesting a dismissal.* — From the beginning of the case, WHJV telegraphed the conditional nature of its counterclaim. The counterclaim itself stated that Connelly would be liable for liquidated damages only "[t]o the extent that . . . WHJV is ultimately found to be liable for liquidated damages." Counterclaim ¶ 4. Early in the litigation, WHJV sought to bifurcate the case and seek resolution of the waiver and release issues first. *See* Doc. No. 25. During the first round of summary judgment motions, WHJV stated that, if Connelly's claims failed, "WHJV would be prepared to dismiss its claim against Connelly without prejudice." Doc. No. 38, at 2 n.1. One month later, in a pretrial memorandum, WHJV represented that its discussions with the Commonwealth over "[t]he reasons for the delay" could "impact aspects of the WHJV's counterclaim." Doc. No. 40, at 2 n.1. This year, WHJV again stated that it was "prepared to dismiss its delay claim against Connelly without prejudice." Doc.

No. 80, at 3–4. Finally, this Rule 41 motion comes less than a month after the Court's final ruling on the release and change order issues. *See* Doc. Nos. 84 & 90. Throughout the case, WHJV has been conscientious and diligent about potentially dismissing the counterclaim.

    *2. The progress of the current litigation favors dismissal.* — Very little effort has been spent to address the counterclaim in discovery. Neither party's expert analyzed the overall delay of the project or Connelly's supposed share of the blame for the overall delay. Much discovery on such an issue remains to be taken — most notably, depositions of Commonwealth representatives and reports from construction scheduling experts. The parties' very limited headway on the counterclaim militates in favor of a dismissal without prejudice.

    *3. Connelly's efforts so far on the counterclaim are scant.* — Although Connelly has filed a motion for summary judgment on the counterclaim, its discovery efforts on the issue have been relatively minimal. As proof of its efforts to investigate the counterclaim, Connelly cites small portions of two depositions of WHJV representatives. In one, the representative was asked "what items were delaying the project that were caused by Connelly" and could not answer the question. *See* McGinty Dep. at 134:14–18. In the other, the colloquy took less than a page of text:

> A: I am aware that throughout some of our analysis process, our analysis had come up to show that there were delays on this project that were, in our mind, the direct result of Connelly.
>
> Q: And was any analysis done showing how many days were caused by Connelly's delay on the project?
>
> A: I am not aware.
>
> Q: And are you aware whether or not the Connelly delays impacted the critical path of the project?

> A: I have heard conversations held relative to the overall project that there are some delays attributable to Connelly that affected the end date of the project.

Swain Dep. at 84:11–85:4. Aside from these two excerpts — amid a sea of deposition testimony — it does not appear that Connelly investigated the counterclaim. Despite Connelly's best efforts to cast the counterclaim as a sword of Damocles dangling perilously over the case, Connelly's behavior in discovery indicates otherwise.

Instead, discovery has focused almost exclusively on the monthly releases and change orders. Connelly's expert did not analyze the overall delay of the project or Connelly's share of the responsibility for the overall delay. To the extent that discovery focused on scheduling delays, the focus was on delays to *Connelly*'s schedule, not the project's *overall* schedule. Therefore, this factor militates in favor of dismissal. *Cf. Maleski*, 162 F.R.D. at 498 ("Here, the action is in its preliminary stages — the pleadings are not complete and little discovery has been conducted."); *Young v. Johnson & Johnson Corp.*, No. 05-CV-2393, 2005 WL 2886218, at *4 (E.D. Pa. Nov. 2, 2005) ("[D]efendants' discovery efforts to date have been relatively minimal."); *Kenney v. Celotex Corp.*, No. 85-CV-0454, 1986 WL 177, at *2 (E.D. Pa. Apr. 8, 1986) ("Little, if any, discovery has been taken and the parties are by no means near to approaching trial.").

*4. Any discovery that has already been taken on the counterclaim can be used in a second, future litigation.* — A second case would not create duplicative discovery. *Cf. J.K. ex rel. Kpakah v. CSX Transp.*, No. 14-CV-729, 2015 WL 3948096, at *3 (E.D. Pa. June 29, 2015) ("[M]uch of defendants' work to date will not be wasted. The evidence obtained in discovery in this case remains relevant and can be utilized in the newly-filed . . . action."); *Young*, 2005 WL

2886218, at *3 ("The evidence obtained in discovery remains relevant and undoubtedly will be utilized in the [subsequent] litigation.").

### C. Attorney's Fees and Costs

Given that WHJV's counterclaim is dismissed without prejudice, Connelly makes an alternative request: that WHJV pay for the costs Connelly incurred defending against the counterclaim.

In a Rule 41 motion, "the decision whether or not to impose costs and attorney's fees upon the [moving party] is within the discretion of the court." *Citizens Sav. Ass'n v. Franciscus*, 120 F.R.D. 22, 24 (M.D. Pa. 1988) (citing *Puerto Rico Maritime Shipping Auth. v. Leith*, 668 F.2d 46, 51 (1st Cir. 1981)). Fee-shifting is not only "very common," *Shulley v. Mileur*, 115 F.R.D. 50, 52 (M.D. Pa. 1987) (citing *Pittsburgh Jaycees v. United States Jaycees*, 89 F.R.D. 454 (W.D. Pa. 1981)), but also "often necessary" to protect the nonmoving party, *Citizens Sav. Ass'n*, 120 F.R.D. at 24 (citing *Puerto Rico Maritime*, 668 F.2d at 51). The purpose of fee-shifting "is to compensate the [nonmoving party] for having incurred the expense of trial preparation without the benefit of a final determination of the controversy." *Id.* (quoting *Shulley*, 115 F.R.D. at 52).

The Court agrees that fee-shifting of some appropriate measure may be warranted and concludes that an evidentiary hearing is the best way to determine the fee amount. Therefore, if the parties are unable to resolve the fee dispute on their own, the Court orders Connelly to submit any continued request (with documentation) for attorney's fees on the counterclaim no later than August 31, 2018.

**CONCLUSION**

For the foregoing reasons, the Court (1) dismisses as moot Connelly's motion for partial summary judgment as to Change Order 7; (2) denies WHJV's motion for summary judgment on Connelly's claim for retainage; (3) grants as unopposed Connelly's motion for summary judgment as to WHJV's counterclaim for concrete slab discoloration; and (4) grants WHJV's motion to dismiss its counterclaim for liquidated damages without prejudice, thereby mooting Connelly's motion for summary judgment as to the counterclaim for liquidated damages.

An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE